It's a pleasure. Thank you. Thank you. Thanks. I'd like to start with the issue of expert testimony about the case and in this case. Ms. Lindell, can you spell out for me the respects in which it does because I just don't see it. What he did was to testify, for example, that this was a, I mean, let's suppose somebody says this is a distribution size, a quantity size distribution. You know what I mean. All right. Let's just suppose that. Is that testifying on the ultimate issue? Okay. So where does he even come close to saying these people intended to distribute it when he is saying, well, this was an offer, it was to sell cocaine for X dollars, and we picked up the purchase later, or we picked up the cash. Well, first of all, Your Honor, I'd like to, he didn't have to do that. He wouldn't intend to violate Rule 714B, and that's clear for Canada. There are a lot of reasons why he wouldn't intend, and that's what was used here. There are things in which he said, this is an offer for Mr. Davis to sell cocaine. What's wrong with that? And that is more problematic because if they're an offer contained in an implicit, if the jury believes that testimony, then they have no choice but to believe in the decision. What's he supposed to do? What's he supposed to do? He can testify that, okay, that this series of numbers, 1, 3, 5, 0, 0, is, is, correlates to the average price of leather and cocaine. He can say that this 7-digit series belongs to a particular subscriber. He can say it's based on other, and some of them perhaps, that this 2-digit, 2-digit series, or 3-digit series, he's managed to correlate to a particular identity. That's what he can do. But what he can't do is he can't make a sequential conclusion about the entire meaning of this and that or none of this. And there's, in addition to these, I don't want to talk about 714B entirely, but the other part of our problem is, this is, this is a, it's a 702 problem. Because he serves a serious function in making a decision about the defendants' intent and about what happened. He, there's, there's cases, and most of them cannot recognize this problem. They have this recognition of this problem under 702 and 714B. There are other cases in other circuits where they, of course, they sort of confirm that in the testimony, particularly from cases where he's accused of both of these activists and as an expert, runs the risk of, he gives the prosecutor two bites in the ass. The prosecutor dictates a close argument, but he doesn't get an argument as, as expert defendants. And that is a flaw. He kind of takes the concession to the jury's function. What he's saying is there's very few and far between if you consider all of Delaney's testimony. And let's assume we even agree with you. Why don't they just constitute harmless error in light of all the other evidence? Well, he has 80 writing, has an evidence-based testimony proving how many of them are right. He testified, the prosecution's case was 22 days in the Senate. He testified on 11. His testimony was over 1,500 pages in answer. His higher-reported testimony, including pre-proxy and different testimony, was 6,171 pages. So, as we retried, so we still debate 3 or 418, but we're in 200 as we retry. We have a cross-transcript of approximately 59,000 to 2,000 pages. That's over 25 percent of the whole transcript, not just of the prosecution's case. So... But how much of that was really... A lot of it. A lot of it. And has the proper interpretation occurred throughout? It's impossible. I mean, I have 80 pages of notes from his testimony, which is a tight dose of what he said so far. It's not... I mean, it might be an example. I think it's a lot. People might agree. But when you go to it, it's not possible to say, and this part is okay, and this part is not. Well, your challenge is to the admissibility of the whole thing, isn't it? Well, there's two challenges there. Yes, he did make a self-evident challenge, and he decided to argue that it shouldn't come... Parts of it shouldn't come in at all. He never contended that he couldn't properly testify to the kilogram sizes, and then so the numbers... So he could testify. They're working in a code. He can testify as an expert as to what the code is. Well... I mean, I'm trying to figure out just what is so bad about this. I think it's a problem. There's not going to be a statute of 702 in the foundation... Yeah. ...issuing a separate form to talk about. There is a problem with that, because I don't think there's a solution to the problem of having to testify to the code. He didn't have, in the background of the page of codes by his own admission, he never saw the page of codes before. He was a drug agent. He was on a wiretap recently. He had... And he didn't ask for them, and he hasn't had to testify. But isn't that what the discretionary call is at the district court? It's not a discretion, but there is, you know, there's abuse of discretion, and there's abuse of discretion. And the standard of 702 is significantly higher when we're talking about abuse of discretion. Well, this isn't exactly the Enigma code. I mean, it's a... You're right. You're right. And that's obviously why. That's what it is. It's why. And that, again, that's not helpful. Well, you know, tell me why it's not helpful, given the fact that there were 5,000      It's not helpful. It's not helpful. It's not helpful. It's not helpful. It's not helpful. Pager transmissions and 4,424 outgoing calls, 2,878 voice intercepts, 5,188 calls to Davis's Pager. Is the jury supposed to sit down there and figure it all out, even though maybe if they took a year, they could? Your Honor, there is a jury. That is not what the jury has to figure out. The civil one has to figure it out. The prosecution did prepare. They had trouble with this. They had charts as well. Sure. So why isn't this helpful? It's helpful. You can have... The problem is it's not helpful in a way that's usually permissible. It's helpful. A lot of things are helpful that are not permissible. It's helpful for psychiatrists to testify. I know the defendant intended to do this. It's helpful. You know, many things are helpful. They are not allowed to talk to the jury. Well, what is the jury? We were discussing this. The testimony about explaining what the code was. Right. Now, you are saying that that goes to some ultimate question that has to be decided by the jury and cannot be the subject of expert testimony as to how the code works? Well, again, I'm not... No. Well, what I'm saying is that it's not that many of them, but it is between the conclusions about the complete meaning of the messages that you serve the jury such that the jury's job to decide if this message... Okay. Well, then you're... Okay. There are certain questions that were asked that were improper because they went to matters that were exclusively within the province of the jury. Is that your argument? No. Okay. Now, were there objections to those? Questions? Well, there were objections at the beginning to that, in the citation of ER 591. But it was at the very beginning. And then the judge is rather critical about opening the door issue and especially ruled at one point that everything could come in and that... Yeah, I just didn't see any record here of specific questions that were wrong that should have been excluded that the district court erred in not excluding. What happened was the way the testimony came in is the prosecutor had a... She had these logs, these weapons, you know, logs with some of the numbers, and she would say, and what does this mean, and what does this mean, and what does this mean. And so his agent would say, this means this, this means this, and based on the court's prior ruling, the court had the intention that that's okay. So, okay. So it came in. Now, there were certain of those that you think that were improper or that the answers were improper or incorrect? Well, improper. Whether they're improper or not, I can't... I mean, I'm not arguing with the lady's interpretation. Well, I guess some of the interpretation was probably wrong. Well, but that's classically the subject of the stuff of cross-examination, isn't it? Okay. Not for the question... Okay. Do you want to go to your next point? Yeah. Okay. I did want to discuss the Utah, the Medina, the addition of the massive Utah and Davis. Why is it even error? Because the only time it came close to implicating Davis was by use of 84. And according to your brief, there were between six and a dozen instances where, I mean, other people were identified as having used 84. So I don't even see why there's error, let alone why it's prejudicial. Well, on the prejudice issue, let me just first address that there was a controversial statement. It was used as crucial pronouns that argued that there were some crucial pronouns that were missed. One was the word they, which clearly says the Medina statement, it was alleged that Medina was involved in a boyfriend crisis. And the use of the word they clearly implies that this is more than one. It's true. But then that... But it doesn't imply who. Well, but in Gray, you know, Gray talks about reference to the existence of a non-competitive defendant. That's a non-competitive defendant. You don't have to lift keys or flags or personal pronouns to indicate that the non-competitive defendant in terms of Davis existed. And, granted, the statement wasn't ambiguous. The human, but the problem is, is it did point the finger at Davis. There was also... But let me just ask about that. Wasn't there overwhelming evidence linking Davis to Medina and Rosas and the 47-kilogram seizure? There was, a lot of evidence. And wouldn't that then take care of this particular issue? Well, I suppose, you said Carlisle's error is symbolic. It's not, I don't think Carlisle's error is just whether there was evidence that was a chief of issue. Then it's whether all of them came in and examined... Well, we were talking about the use of 84, and I'm just saying there was overwhelming evidence. You may have many other examples, but I kept going through the record and going through the record and going through the record, and I quite honestly, speaking for myself, was just left with the impression that there were several questions that might have been improper, but there was overwhelming evidence to remove prejudice. Were you trying to see an issue of an expert or both? Both. Well, then I should talk about Carlisle's error, perhaps, in an overall sense. I did want to spend a little bit of time with you to talk about... I'll talk about Carlisle's error in a little bit. Well, I have already talked about it in the context of the lady, but I do want to talk about it, and I'll talk about it in context of Carlisle's error in the indication that there's something that doesn't stand. One of the key things in the prosecution's case is that Davis is a violent, threatening, and dangerous man. If the prosecution ever thought, may have talked about the violence, to raise that in Carlisle's case. Of course, as I pointed out earlier, some of those acts were liquor, food, weapons. The other fact that goes with Carlisle, and again, this goes to the general Carlisle's error. There was not errors in a lot of Carlisle's case. But within the indication that it doesn't want to stand, it altered the prosecution's case in an unimaginable way. Because it constitutes extra record proof that here is somebody who is actually being intimidated by Mr. Davis. Surely, not just by his inner presence, perhaps by some unknown competitive aspect. And these errors... These errors, when put together, cannot be... But certainly not alone, because the government never referred to that again. In terms of the opening? They never referred to the meaning of her invoking the Fifth. No, they didn't. But that's not required. What's required is an active... The test is... My reading is a test. And these are old cases. It hasn't been done recently. But my reading is, there's two forms. One is whether the prosecutor thought there was a substantial chance that he would have served the Fifth. And there's clearly a factual dispute about that. It was not an active error in that case. And second, whether he acted or whether it was in fact... In fact, most of the prosecution's case was in an unimaginable way. I just don't see what difference... You're right on every one of these things. I'm just not sure what difference it's going to make in the end. Because I don't see the relationship of any of these things to any critical, disputed matter in the case. That's what I... Look at this, Your Honor. Because, for example, it's critical to lay this case down. For example, you look at the latest testimony. One of the key things that you're going to have to decide, well, how much... Whether it's like, hi, I'm a friend of the team. You're going to let it fly. Hi, I'm glad you can speak with me. So they had to find a dispute advisor. She was a private professor to them. And they had to find a dispute... They did find a dispute advisor. I don't know if you can hear that. Well, the latest testimony is critical. Particular is one finding, which is a record that has been managed by my son. Because without that, if you don't... If he made all these decisions and pushed it, then you're going to survive a lot. And that is... Delaney. Yeah, I was referring to the other one. Yeah, the other one. You know, I mean, the fact that, evidently, it's kind of dangerous and violent really can't be overstated. It's overwhelming and prejudicial. It's just a difficult, you know... I can't... The result may well be different if it's evident in this case. And I'm not talking about decision-making. Excuse me. We're talking about the case and the issue of the combined cost of your statements. All right. Thank you. Thank you. Good morning. Thank you for being on behalf of the Supreme Court. I will be addressing... I think we've changed, but I don't think I've asked you to do that too many times. First, I would like to pick up briefly on the Delaney expert witness argument. To make a basic point, which I'm sure the Court recognizes, that the prejudice, the calculus of prejudice, has to live in the Court in a different... has to each issue raised. It's not just your issue. It's that issue. And Judge Walker, initially, I think, Judge Schroeder, said it, but I want to ask, what is this testimony that we are complaining about? Well, it's very clear in respect to the Court. There really are only two instances of direct testimony by Agent Delaney after this in the Court. One dealing with the April 6th and 6th transactions, and another fairly extensive sentence on February 12th, in which Agent Delaney goes through a series of phone calls from the Inspection of Hawaii, back in December, through March. And there's a call in December, a couple of calls in January, a couple of calls in February, a couple of calls in March. And as to each of these, there is a pager. There's a pager, I think. And then there's an attempt to take a telephone call. So what's wrong with that? I'm about to get to that. What's wrong with that is, to each of those transactions, Agent Delaney states that a transaction actually occurred. This was, in fact, a consummated call during the week. What's wrong with that? There's no confirmation. I understand. What's wrong with the testimony? I just don't – I guess I just have a fundamental problem here. I must have tried 300 or 400 of these cases with an agent sitting there and describing in detail what happened. I just don't understand the problem. It's not saying that McCoy intended to distribute cocaine. It's saying, on this date, here is something which occurred. But when he said it occurred, was that McCoy, in fact, did distribute cocaine? He said there was an offer. McCoy called Davis or McCoy called somebody else, was told to show up at a particular place, make a delivery, whatever. There's most of the evidence on most of the telephone conversations that are in the Associated Compensation. If Agent Delaney's own declaration in opposition to the suppression motion, he characterized those as fairly benign. They have to do – he's gambling. One of them has to do with Super Bowl. They have to do with McCoy. There's female problems. There's not a hitch of corroboration as to any of these transactions. So the only evidence before the jury demonstrating that, in fact, the transactions occur is Agent Delaney's testimony. That's a clear – Yes, so the only way they could catch the guy was by deciphering telephone calls. So what? They didn't surveil him. So what? Is there any case authority that says they have to surveil somebody? There is a case authority on the Wallace Hill Club that says the agent cannot take the place of the jury, cannot substitute through his conclusion for the jury. The other – the other thing is that, and I'll say it for the rest of the time, is that the antitrust suppression is Agent Delaney's testimony. His case is not under satisfying evidence against Mr. McCoy. Okay. Why don't you go to your other point? My other point, and there are a number of other points to say. There's a case before it, and there's a case after it, and there's a case before it. And, in fact, there are all these other cases. And I read some of their argument by a person who was on the standing review. Nevertheless, I would submit that this is a case in which manifest prejudice is manifest. And I would submit that that's for three reasons. I won't go into detail. But, in summary, they are that, first, the quantity of involvement of defendants against Mr. James was so disparate from that of Mr. McCoy that it would necessarily have been disappointing. Go ahead. The second point is that the course, criteria for disability became so broad that it essentially was a unified association. And the third is that, in light of the first two problems, the instructions were natural. They were not the strong, optional instructions that the human element stated were necessary. They were anticipated, and they were essentially generic instructions that Mr. Taylor was following. What's the closest Ninth Circuit case that would support granting Mr. McCoy a new trial? Well, conversely, I don't think there's any case that government decided. And I would recommend that the government is not favorable to what they were saying. But none of the instructions the government decided show that Mr. McCoy should not be granted a determinant case. Well, that's true. But let me ask you a more specific question, because there are some cases where there has been an order of a new trial because two defendants were tried together. But most of those cases that I am familiar with involve brutineer. That is the admission of a confession of a co-defendant that implicates the defendant. Now, this case does not involve brutineer. I'm just wondering if you have any authority that held that because of the prejudice that one guy is a bad guy, a worse guy than my client, or my client is a little guy, and this is a big guy, which is frequently tried together for all kinds of reasons. But in that kind of situation, that there even without brutineer, there was a reversal. And there aren't any there that I can see. The judge did, of course, give standard cautionary instructions to take evidences to each defendant and so forth. Did – were any cautionary instructions requested that he didn't give? Well, was there any request that he please kindly do it in the middle? And he refused to do it or forgot to? Well, I mean, I know. Judges are human.   So he forgets. Okay. Let's depend on the methodology for my objection. You know that I object to all of the requests. It has two reasons. Let's look at the provisions on not jumping up every minute. And that's at the end of it, if dated several times in the record. I also wanted to get to the point that I've read this language several times. It's not like I want to quote you from judgments and rules. The court has the record. Nevertheless, I have read this language several times, and it is a criteria by which Judge Jensen admitted all of the evidence against David Spencer against the court. And he says the following. I'm not, and I've said it to you all before, I'm not really impressed with the notion that you're able to ship David in order to conspire to distribute cocaine. That is evidence. And I'm just going to look at it. It's evidence that Mr. David is drug trafficking. It's a circumstantial proof of the nature of his relationship with the court because he's a drug trafficker. In essence, what the court has said is that any evidence regarding Mr. David's drug trafficking is provative of Mr. McCloy's guilt. That is the essence of a justified association. There's no mirror. The line between circumstantial evidence, between the inferences of the fact that Mr. David is a drug dealer to the fact that Mr. McCloy is a drug dealer, that is evidence of guilt. That's the nature of the problem. And no figures in the court draw the line between that circumstantial evidence and the evidence of his guilt. And again, that goes back to the discussion that was also mentioned, that one of the problems with the generic sense is that there's no mirror. Where in the record do we find the instruction that would have reminded the jury to distinguish between those things that you're discussing? There is no mirror. And I do want to mention that this is kind of the objective of the discussion as a whole. You have on the one hand what is the general set of considerations that is connected to the discussion. On the other hand, you have Pinkerton's discussion, which is within the model of discussion, and essentially undercuts that in terms of set of considerations, since for any defendant, you can't consider. Right. We all have some trouble from time to time with Pinkerton, but it is the law. So what is achieved in terms of the only instruction that the government is pointing to as juridic is the generic general set of considerations. Thank you. Thank you. Thank you. Thank you. I'm Linda Pinkerton, and I'm a new member of the United States Judicial Board. Before turning to the specific issue, I'd like to make two points about the record in this case. One is about the evidence of violence that both counsel have referred to in connection with different issues. I went through the transcript and copied every page I was aware of and evidence that I think that they referred to, including Wayne's and one part of Johnson and the other. I came up with 88 pages out of the 5,000-page trial transcript. Most of the evidence of violence, acts, and intimidation was excluded by this report, ultimately. I'd also like to respond to the argument that the court simply never gave an instruction other than the generic instruction about the violence evidence. When Mr. Taylor, who was one of the first witnesses to talk about this, gave his testimony, the court at that point, in addition to the general judge, said to the jury, and this quote that I've given up for you, remember how I told you that the evidence should only be considered against each defendant separately. And this is an example. You didn't have justice evidence. You said, this is the kind of thing I'm talking about. This is not to be considered at all against Mr. McCoy. But the problem I have with that is that the way the government put on the witnesses, if I were a juror, it would be very hard for me to compartmentalize evidence against Davis, evidence against McCoy. It just kept coming up. Even though there are 88 pages, it depends on where it comes up and how often it comes up and how strong that evidence is. There were some pretty violent acts described. Well, it ended up, Your Honor, being Mr. Taylor, who was a cooperating witness, testifying about threats or discussions. There was Mr. Johnson, who had been the object of a lot of threats, and that was several cases that came in. There was Ms. Lynch, who apparently had been working with the enforcer, Mr. Max, who had nothing to do with McCoy. Her eye caught all of her testimony. There was an officer who, in master's of parodies, said to him, I'm an enforcer. There were some telephone conversations that related to violence. But none of the key to the government's case against Mr. McCoy. And I think it's Mr. Davis' bad habit. I think that the critical evidence in the government's case was the telephone conversations. The pager codes were important, but much of Delaney's testimony, let's remember, didn't relate to pager codes. It was plain and easy. The tape means the government suspended it. It's nowhere near all of them. I mean, this is the evidence. Well, I'm not referring to Delaney's testimony. I'm referring to the evidence of violent acts by Davis and the impression. I mean, I have to honestly say, it was very shocking kinds of evidence. And even though one page out of a hundred, that one page is pretty shocking. The reason that word came in, it comes in as just talking about it. I mean, the evidence that was most, that would have been most shocking, was excluded by the district court. We were 403. You mean there was more? There was certainly more. I mean, the district court, there was additional evidence that the district court excluded. But it did not come in. It was a very small portion of the testimony. And the district court gave careful instructions. I also want to point out that, as counsel said, the critical evidence against Mr. McCoy was in Delaney's testimony.  The prosecutor carefully, before they turned to the Kansas State conspiracy, which is a conspiracy that McCoy has charged with. Davis has charged with conspiracy. She said, now you mentioned Delaney was referring to a new set of cases related to interstate communications. Is that correct? And so they marked out the part of the trial in the case relating to Mr. McCoy. This is what came in during that segment of the trial. So it was compartmentalized. And it's also important to note that there was overwhelming evidence, certainly, against Mr. Davis that I don't think the Kansas court had. I'm just querying. They are to sever McCoy. And because of the shocking evidence, in my opinion, against Davis, how the jury could separate it. I'd ask you to read the testimony and not accept counsel seems to believe that points in the brief may be putting in some evidence that didn't come in. That would have been more shocking. If the court goes through and reads the pages, it doesn't seem the kind of thing that ought to be. This court has said that there's a very heavy burden on a defendant to show these kind of careful instructions in addition to the generic instructions. The instructions in this is exactly what I was telling you about. You don't consider this. The defendants bear a very heavy burden to overcome the presumptions of those who concur with all of the instructions. I also want to add that the evidence in respect to Mr. McCoy was also, on the charges he was ultimately convicted on, there was certainly overwhelming evidence in the defendant's own telephone conversations with Davis of his involvement in the Kansas City transaction, which was the basis of all the substance of the housing intent and the basis of the sentence for Equinox. That evidence was simply overwhelming. And there's no way in which hearing a federal jury with a careful instruction of not paying attention to it with respect to McCoy, hearing this much evidence of violent acts or threats of intimidation by Mr. Davis, would have influenced the jury to convict him on those charges, because the evidence of his involvement in the substance of the transaction through his own words in telephone conversations was also overwhelming. I can go through this. Is there a law that you have to sever cases? Do we have law that if some of the evidence is going to be very strong, is going to involve violence against one, that the case has to be severed? Absolutely not, Your Honor. There's a case I had in our brief where one of the cases, none of the cases is exactly the same, but there's a lot of evidence of violent acts. I think it's an older case. It's an even younger case. But no, the law is that there's very, very strong evidence of discretionary standards. And the question before this Court is whether a joint trial in this case, given the instructions, would so manifestly prejudicial as to require the court to exercise discretion because the judge was denying a fair trial. And, yeah, the Escalante case where a co-defendant had participated apparently in a murder, and this Court said, and had organized a crime connection and things that would be very prejudicial and shocking, and this Court said our Court assumes the jury was going to follow the trial by instruction. Let me ask of the 6,000 pages of testimony, what proportion of the testimony was against Davis? Well, Your Honor, the judge was against Davis. Yes. That's a hard question to answer. I'd say well over half. Probably three-quarters. But it's also, of course, remember that this Court reported a charge of conspiracy. And I believe that this Court's remark often comes to the mark of counsel line on evidence that there was the existence of a drug trafficking conspiracy. Clearly, that's an element that the government requires to prove. So although I don't think we can say that evidence relating to the interest based drug conspiracy, even if it didn't refer to it quite specifically, I don't think we can say that it didn't. It clearly relates to an element that the government requires to prove beyond reasonable doubt that there was the existence of that conspiracy. That being said, and also the, well, I'm a little bit of a vet, the evidence of that the time point of the conspiracy, in large part, was showing that he used the same system of coded communications, the same code numbers, the same way of using MIMs, references, door-to-door, and all that to report a bed, that he used my other members, Mr. Taylor and Walter Andrews, who were also in an interstate conspiracy. And that clearly, in our view, was evidence that jury could rely on to time point into the conspiracy. So even though a lot of the evidence didn't relate to a point directly, but it was relevant evidence that the jury could rely on to find one of the elements of the conspiracy. And so I don't know whether the court wants me to start going through the issues or if you have areas that are important to you, I would really like to address them. I didn't want to say anything about the 704B. I think the governing precedents are hermetic and blunt, and if the court looks at the statements in those cases that were held to be purposely permissible in the 704B, it's clear that testimony about coded messages that show willingness to participate in a drug offense is not permitted testimony about an offense. And I also urge the court to not just look at a number of cases that won't have to be overwhelming to have that kind of testimony, but to look at the overwhelming evidence against the defendant that was not involved in the claims of those testimonies. Okay. I think we have your point. Thank you. Thank you. Just kind of, really, one of the two points. The government is arguing that the phone conversations, even without the patron post, were overwhelming evidence. Evidence were overwhelming evidence. Most of the conversations we had with U.S. and more so than that were clearly a criminal choice. Those went to what I'm thinking about is the one that went to 47 after the attempted buyback. The court had an attempted buyback for 47 kilograms. But beyond that, most of them were completely ambiguous. And in that sense, we can't, I don't, for the government to say that the patron code evidence was not involved in the case, it was involved in the case against the defendant. The second point I wanted to address was Plum. Plum did not get involved in this case. We, first of all, Plum involved a very brief interpretation of some of the words, how Plum used the word, she didn't. She didn't. I believe she referenced. This case involves, first of all, it involves some other codes, which is, there are cases involving other codes. Second of all, Delaney used language that is synonymous with intent to use the word right, offer, confirm. These words contain a definition and are not intended. That distinguishes this case from Plum. Finally, Plum, well, Plum did not know the rule, but Plum did not clearly address the case. So there is that problem as well. The case is more pertinent to the fact that this case is TANF, in this circuit. Okay. Thank you. Thank you. Thank you, Ms. Landau. Ms. Landau.  Thank you, counsel. The matters just argued are submitted for decision. That concludes the Court's calendar for this morning. And the Court stands adjourned. The Court is adjourned. The Court is adjourned.
judges: Schroeder, Dw Nelson, Rymer